# CASE NUMBER 12-15287

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEANNA GANGSTEE,

Plaintiff and Appellant,

and

JORDAN CHAMBERS,

Plaintiff,

v.

COUNTY OF SACRAMENTO; et al.,

Defendants - Appellees

Appeal from the United States District Court for the Eastern District of California

## APPELLANT'S OPENING BRIEF

**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
GUY DANILOWITZ, State Bar #257733
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiff-Appellant
Deanna Gangstee

# TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION………………………………….......1

    A.   The Basis for the District Court's Jurisdiction……………..…..…..1

    B.   The Basis for the Court of Appeals Jurisdiction…………….…..…1

    C.   Filing Date of the Appeal…………………………………….....1

    D.   Assertion that the Appeal is from a Final Order or Judgment that Disposes of all Parties' Claims………………………………….....1

II. ISSUES PRESENTED…………………………………………….......2

III. STATEMENT OF THE CASE……………………………………......2

IV. STATEMENT OF FACTS…………………………………………...4

V. SUMMARY OF THE ARGUMENT……………………………..……6

VI. STANDARD OF REVIEW……………………………………….....6

VII. ARGUMENT………………………………………………….……7

    A. Summary Judgment Cannot Be Granted if There is a Genuine Issue as to Any Material Fact………………………….…..…..7

    B. Summary Judgment is Generally Inappropriate When the Issues Involve Intent…………………………………………..…..8

    C. Three Pieces of Circumstantial Evidence Support a Reasonable Inference that LeCouve Intentionally Deployed the Dog……..……..9

    D. The District Court Did Not Consider All of Gangstee's Evidence and Failed to Draw Any Inferences in her Favor……………………..9

    E. The Only Evidence Supporting Defendants' Contention that LeCouve Released the Dog Unintentionally is LeCouve's own Testimony………………………….…………………………..…..12

F.  The District Court Acknowledged a Genuine Issue of Material Fact Yet Granted Defendants' Motion Anyway………………..…..13

G. Case Law Cited By the Court Does Not Support Granting Summary Judgment………………………………………….…...14

    1.  It Was Undisputed that the Dog in *Dennen v. Duluth* Was Used for Protection and There Were No Witnesses Other than the Officer……………..….…15

    2.  Neither *Dunigan v. Noble* nor *Neal v. Melton* Involved Evidence of a Dog Intentionally Deployed To Bite Someone…………………………………..…..16

    3.  *Melgar v. Greene* Supports Reversal in this Case Because that Case Involved Evidence of a Dog Intentionally Deployed to Bite Someone……………...16

    4.  The Analogy to *Neely v. St. Paul* is a Poor Fit………..17

VIII. CONCLUSION……………………………………………………..18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. City & County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994)    8, 9

*Associated Press v. United States*, 326 U.S. 1 (U.S. 1945)…………………    8

*American Fidelity & Casualty Co.*, 249 F.2d 616 (9th Cir. 1957)………….    8

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242 (1986)……………………..    7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………    7

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003)…………….    9

*Dennen v. City of Duluth*, 2002 U.S. Dist. LEXIS 7887 (D. Minn. May 1, 2002)…………………………………………………………………………    14, 15, 16, 17

*Dunigan v. Noble* 390 F.3d 486 (6th Cir. 2004)…………………….........    14, 16

*Espinosa v. City & County of San Francisco,* 598 F.3d 528 (9th Cir. 2010) .    9

*Jones v. Union Pacific R.R.*, 968 F.2d 937 (9th Cir. 1992)………...............    7

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002)………………………….    7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)…..    7,8

*Melgar v. Greene*, 593 F.3d 348 (4th Cir. 2010)…………………………….    14, 17

*Middleton v. Reynolds Metals Co.*, 963 F.2d 881 (6th Cir. 1992)…………..    8

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (U.S. 1978)…………………..    3

*Neal v. Melton*, 453 Fed. Appx. 572 (6th Cir. 2011)………………………..    14

*Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 343 (9th Cir. 1978)……………………………………………………………………………    15, 17, 18

*Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916 (9th Cir. 2004)……………  7

*Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464 (1962)……….  8

*Quadra v. Superior Court of San Francisco*, 378 F. Supp. 605 (N.D. Cal. 1974)………………………………………………………………………...  8

*Sartor v. Arkansas Gas Corp.*, 321 U.S. 620 (1944)……………….........  8

**FEDERAL STATUTES**

28 U.S.C. § 1291…………………………………………………………..  1

28 U.S.C. § 1331………………………………………………………….  1

28 U.S.C. §1343………………………………………………………….  1

42 U.S.C. § 1983………………………………………………………….  1

42 U.S.C. § 1988………………………………………………………….  1

Fed. R. Civ. P. 56(a)……………………………………………………  7

**STATE STATUTES**

Cal. Civ. Code Sec. 3342…………………………………………………….  3

**CONSTITUTIONS**

U.S. Const. amend. IV ……………….............................................  3

# I.  STATEMENT OF JURISDICTION

## A.    The Basis for the District Court's Jurisdiction

The complaint in the district court sought, *inter alia*, damages pursuant to Title 42 U.S.C. sections 1983 and 1988, for violation of plaintiffs' civil rights. Jurisdiction in the district court was founded upon Title 28 U.S.C. sections 1331 and 1343.

## B.    The Basis for the Court of Appeals Jurisdiction

Pursuant to 28 United States Code Section 1291 this Court has jurisdiction over this appeal.   *See* § D below.

## C.    Filing Date of the Appeal

The trial court's Order granting defendants' Motion for Summary Judgment was filed on January 12, 2012.   (Appellant's Excerpts of Record Page Number(s) (hereinafter "ER") 3 – 17).  Notice of Appeal was filed on February 9, 2012.  (ER 1).

## D.    Assertion that the Appeal is from a Final Order or Judgment that Disposes of all Parties' Claims

This is an appeal from a final order granting summary judgment which disposes of all parties' claims.

## II.    ISSUES PRESENTED

1.    Did the District Court err by granting summary judgment after acknowledging that the parties disputed whether or not LeCouve intentionally deployed the dog?

2.    Did the District Court err by granting summary judgment without drawing all inferences and viewing all evidence in favor of the non-moving party?

## III.    STATEMENT OF THE CASE

Plaintiff Deanna Gangstee and her son Jordan Chambers filed this action against the County of Sacramento, Sacramento County Sheriff John McGiness and Sacramento County Sheriff's Deputy Stephen LeCouve seeking compensation for Gangstee's physical injuries, medical expenses, pain and suffering, and emotional distress and Chambers' emotional distress that they allege was caused by the unprovoked, unnecessary, and vicious attack by a Sacramento County Sheriff's Department canine named "Dantes" on plaintiff Deanna Gangstee (Gangstee), an uninvolved innocent third party.  The brutal attack occurred outside Gangstee's home and was witnessed by Gangstee's son, plaintiff Jordan Chambers (Chambers), who was eight years old at the time.

Gangstee alleged four claims pursuant to federal law actionable under 42 United States Code Section 1983:  In the First Cause of Action, Gangstee alleged

that Defendant LeCouve used excessive force in violation of the Fourth Amendment to the United States Constitution. In the Second Cause of Action, Gangstee alleged, pursuant to *Monell v. Dept. of Social Services,* 436 U.S. 658 (U.S. 1978), that Defendants County of Sacramento and John McGinness had unconstitutional policies and procedures which caused the excessive force violation. In the Third Cause of Action, Gangstee alleged a *Monell* violation against the County and McGinness for unconstitutional practices. In the Fourth Cause of Action, Gangstee alleged a claim for supervisory liability against the County and McGinness.

In the Fifth Cause of Action, Gangstee alleged a California state law claim for battery against the County and LeCouve. In the Sixth Cause of Action, Gangstee alleged a California state law claim for negligence against the County and LeCouve. In the Seventh Cause of Action, Chambers alleged a California state law claim for negligent infliction of emotional distress against the County and LeCouve. In the Eighth Cause of Action, Gangstee alleged a state law claim for a violation of California Civil Code Section 3342 which is a strict liability dog bite statute.

Sacramento County, McGinness and LeCouve moved for summary judgment on the first, second, third, fourth and sixth causes of action, as well as the

claims for punitive damages.  Plaintiffs conceded that there was no basis for the sixth cause of action for negligence against defendant McGinness.

Plaintiff Gangstee moved for summary adjudication on the eighth cause of action, the claimed violation of the strict liability dog-bite statute.  Defendants filed a statement of non-opposition.

After full briefing and oral argument, the court issued its order on January 11, 2012, granting defendants' motion, declining to exercise supplemental jurisdiction over the remainder of plaintiffs' claims, and denying plaintiff Gangstee's motion.  Gangstee filed a Notice of Appeal on February 9, 2012 appealing the dismissal of the first, second, third, and fourth causes of action only. Chambers did not appeal.

## IV.  STATEMENT OF FACTS

At about 2:45 in the afternoon of May 18, 2008, plaintiff Deanna Gangstee, who was an uninvolved innocent third party, was bitten and injured by Sacramento County Sheriff's Department dog "Dantes."  The events that led up to the dog injuring Gangstee began with a vehicle pursuit of a suspect which culminated on Northcrest Circle in Carmichael, the street on which Gangstee lives.  (ER 065 – 066); Defendant and respondent Stephen LeCouve was one of the Sacramento Sheriff's deputies engaged in the pursuit.  (ER 65).  LeCouve's vehicle was the third pursuing vehicle and arrived at the scene where the chase culminated, after

the vehicles of deputies Vitaly Prokopchuk and Erik Bonney.  (ER 19:7 – 16; ER 27:1 – 23; ER 65).  When Gangstee, who had been inside her house cleaning, heard the sirens she went outside to check on her eight-year old son, Jordan Chambers, who had been playing outside, and heard officers yelling something about blowing somebody's head off.  (ER 54 ¶¶3,4; ER 59 ¶¶4 – 6).  Gangstee saw Jordan across the street and signaled him to move to a safer location as she began running towards him and away from the police activity.  (ER 54 ¶¶3,4; ER 59 ¶7).

The parties dispute what happened next.  Gangstee's factual contentions are that, after deputies Prokopchuk and Bonney had the suspect, whose name was Elton Ward, detained at gunpoint and Ward was complying with their commands, LeCouve took his unrestrained police dog "Dantes," out of the car with the intent that it would be used against Ward or someone else in the car.  (ER 19 –21, 27 – 28; ER 56 ¶¶3 – 5; ER 51 ¶¶6 – 13).  The dog went towards Ward as if it was going to bite him and then broke into a run and chased and bit plaintiff Gangstee (ER 19 –21, 27 – 28; ER 56 ¶¶3 – 5; ER 51 ¶¶6 – 13).

Defendants' version is that, although LeCouve did indeed take the dog out of the car and the dog was not on a leash, LeCouve was holding the dog by its collar when it escaped his grip and chased and bit Gangstee.  ER 62 –67).

5

## V.    SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment because the court itself acknowledged a dispute of material fact, namely, whether or not LeCouve intended to deploy the dog, yet granted summary judgment based on its acceptance of defendant LeCouve's self-serving articulation of a theory that absolves him of liability that is not corroborated by any other evidence.  The court failed to draw inferences in Gangstee's favor that the deployment was intentional from evidence that the dog first went towards Ward before chasing Gangstee and that it wasn't called off until after it was done pursuing Ward and had begun pursuing Gangstee.  Instead, the court mischaracterized Gangstee's argument as a claim that the sole act of intentionally taking the dog out of the car without a leash constituted an intentional deployment.  The cases that the court cites in support of its opinion are inapposite.  The dismissal of plaintiff's second, third, and fourth causes of action was based solely on the finding of no underlying constitutional violation and should be reversed as well.

## VI.    STANDARD OF REVIEW

A district court's entry of summary judgment is reviewed *de novo*.  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir. 1992).   The appellate court must determine "viewing the evidence in the light most favorable to . . . the non-moving party, whether there are

any genuine issues of material fact and whether the district court correctly applied the substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. Idaho 2004).

## VII.  ARGUMENT

### A.    *Summary Judgment Cannot Be Granted if There is a Genuine Dispute as to Any Material Fact*

A court will grant summary judgment "if …there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A).  The moving party bears the initial burden of showing the court that there is not a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 248-49 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party, which must establish that there is a genuine issue of material fact. …." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986).   In ruling on a motion for summary judgment or summary adjudication, the court must draw all inferences and view all evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

It is well-settled that Rule 56 "should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." *Associated Press v. United States*, 326 U.S. 1, 6 (U.S. 1945); *Cox v. American Fidelity & Casualty Co.*, 249 F.2d 616, 618 (9th Cir. 1957).  Summary

judgment is appropriate only "where it is quite clear what the truth is...." *Quadra v. Superior Court of San Francisco*, 378 F. Supp. 605, 623-624 (N.D. Cal. 1974) *citing Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 627 (1944); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962).

### B.    Summary Judgment is Generally Inappropriate When the Issues Involve Intent

Although courts are not precluded from determining a party's state of mind, "summary judgment is likely to be inappropriate in cases where the issues involve intent." *Middleton v. Reynolds Metals Co*., 963 F.2d 881, 882 (6th Cir. 1992).  For example, in *Alexander v. City & County of San Francisco*, a case often cited for other reasons, the Ninth Circuit reversed the district court's grant of summary judgment on the basis of qualified immunity because the parties disputed whether or not the intention of the police officers who stormed the decedent's home and shot and killed him during enforcement of an administrative warrant was to arrest him or to make the premises safe.  29 F.3d 1355, 1364 (9th Cir. 1994).

Similarly, in *Espinosa v. City & County of San Francisco*, officers entered an apartment where the decedent was staying, found a bloody shirt and detained one person before fatally shooting decedent, whom officers found in the attic, and whom did not follow orders to put his hands up.  598 F.3d 528 (9th Cir. 2010.) The appellate court agreed with the district court's finding that there were "genuine issues of fact regarding whether the officers intentionally or recklessly provoked a

confrontation with [decedent]." *Id.* at 539. In dicta citing *Drummond v. City of Anaheim* the Espinosa court stated: "In police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury." Espinosa v. City & County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010) *citing Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

### C.    Three Pieces of Circumstantial Evidence Support a Reasonable Inference that LeCouve Intentionally Deployed the Dog

In opposition to defendants' motion for summary adjudication, Gangstee presented the following evidence supporting the inference that LeCouve intended to deploy the dog: 1.) the suspect Elton Ward testified in his declaration and LeCouve stated in his accident report prepared shortly after the incident that the dog was headed towards the suspect Ward before going after Gangstee (ER 51 ¶12, ER 66);  2.) Deputy Prokopchuk did not hear LeCouve attempt to call off the dog until after it was no longer headed towards Ward and was chasing Gangstee (ER 20:24 –21:6); and 3.) Ward and Phyllis Middleton's testified in their declarations that the dog was never restrained outside of the vehicle. (ER 51 ¶10, ER 56 ¶4).

### D.    The District Court Did Not Consider All of Gangstee's Evidence and Failed to Draw Any Inferences in her Favor

The district court represented Gangstee's evidence inaccurately when it stated that "the additional facts of Dantes' running past Ward, the suspect, and the

9

possible delay in LeCouve's yelling for the dog to stop do not support" the inference that LeCouve intentionally deployed the dog.   (ER 15:6 – 11).   On the contrary, Gangstee's evidence was not that the dog ran **past** Ward.  Rather, Elton Ward in his declaration stated that the dog went **towards him as if it was going to bite him** and then ran past him and after Gangstee.   (ER 51 ¶12).      Even LeCouve's own accident report, written shortly after the incident, concedes that Dantes initially ran "towards the suspect in the vehicle."  (ER 66).  Yet the court ignores this, simply stating in its recitation of the facts that "Dantes got away from LeCouve and began to chase Gangstee."  (ER 7:13 – 14).

In addition, the court failed to view the evidence that LeCouve did not yell for the dog to stop until after it had passed Ward and was heading for Gangstee in the light most favorable to Gangstee.  Deputy Prokopchuk clearly testified at his deposition that only after the dog ran towards the suspect and then went by the suspect did LeCouve yell for the dog to stop.  (ER 20:24 – 21:6).  The only evidence that LeCouve yelled for the dog to stop as it was headed for Ward is LeCouve's self-serving statement which contradicts Prokopchuk's testimony.  The district court order discusses the parties' dispute over whether LeCouve yelled any commands to the dog before Dantes bit Gangstee **but does not mention Gangstee's evidence that LeCouve never called off the dog when it was headed for Ward**, other than the above-stated reference to "the possible delay in

LeCouve's yelling for the dog to stop."  (ER 7:16 – 21, 15:9 – 11).  Plaintiff's contention is that not calling the dog off while it was headed for Ward raises the inference that LeCouve intended to use the dog on Ward.

Finally, the court mischaracterized Gangstee's argument by stating that "[i]n essence, they argue that by intentionally taking Dantes out of the car without his leash, LeCouve committed an act sufficient to intentionally deploy Dantes" (ER 14:3 – 6) and "[e]ven if the absence of a leash violated departmental policy, as plaintiffs argue, the violation by itself does not support a reasonable inference that LeCouve intentionally deployed Dantes."  (ER 15:7 – 11).  Rather, Gangstee's contention is that the fact that the dog was never restrained **in combination with other evidence,** including that the dog initially headed towards Ward and LeCouve never attempted to call off the dog from going after Ward, supports a reasonable inference that LeCouve intentionally deployed the dog.

The court's conclusion that LeCouve not giving any commands to Dantes prior to his running after her "undermines an inference of intentional deployment" is incorrect:  not calling the dog off while it was headed for Ward raises the inference that LeCouve intended to use the dog on Ward.  On the other hand, if LeCouve **had** commanded Dantes to stop immediately after he claimed the dog broke free, then that would suggest an accidental release, undermining an inference of intentional deployment, not the other way around.

### E.    The Only Evidence Supporting Defendants' Contention that LeCouve Released the Dog Unintentionally is LeCouve's Own Testimony

Deputy LeCouve claims that he was holding the dog with his left hand when it somehow "twisted" out of his grip.  (ER 62 ¶¶7,9; ER 65, 66).   None of the other witnesses corroborate LeCouve's explanation for how the dog who was under his control and direction ended up biting an innocent uninvolved third party. The two witnesses who saw the dog get out of the car stated that LeCouve never held onto the dog when it was outside of the car.  (ER 51 ¶¶10, 12; ER 56 ¶4). Deputy Bonney wasn't aware of the dog until after Gangstee had been bitten.  (ER 27:1 – 8).   Deputy Prokopchuk first became aware of the dog when it was headed towards Ward.   (ER 20:22 – 25).   If there was any evidence that supported LeCouve's theory it would be on the videotape which defendants acknowledge was made of a significant portion of the relevant events recorded by in-car cameras but defendants claim that they are unable to locate any of those recordings.  (ER 22:23 – 24:8, 31:1 – 32:8, 38:17 – 25, 39:14 – 40:1, 41:10 – 23, 42:5 – 7, 43:5 – 23, 45 – 47).

Other evidence casts further doubt on LeCouve's explanation.   LeCouve claims his finger was injured by the dog twisting out of his grip yet, never documented the injury nor sought treatment for it, and there are no photographs of the injury.  (ER 33:15 – 35:7).   In addition, LeCouve's claim that he covered the suspect with his weapon and ordered the suspect to show his hands (ER 62 ¶7) is

contradicted by the deposition testimony of Deputies Prokopchuk and Bonney who stated that they were the ones who gained the suspect's compliance at gunpoint and didn't mention LeCouve's involvement other than Prokopchuk's observation that LeCouve went running after his dog after it went towards and then kept going past the suspect Ward and chased after Gangstee.  (ER 19:12 – 20:1, 20:22 – 21:2, 27:1 – 8).

### F.   The District Court Acknowledged a Genuine Issue of Material Fact Yet Granted Defendants' Motion Anyway

In this case the district court acknowledged a genuine issue of material fact, stating that "the parties dispute whether LeCouve intentionally deployed the dog" (ER 12:5 – 6), yet granted defendants' motion anyway.  This is contrary to the mandate of Rule 56 and contrary to the evidence.

Following the mandate of Rule 56 would require acknowledging the evidence that the dog first went towards the suspect Ward and that LeCouve did not attempt to call the dog off until after it had gone passed Ward.  Viewing this evidence, along with evidence that the dog was never restrained outside the vehicle, in the light most favorable to Gangstee and drawing all inferences in her favor, a reasonable jury could find that LeCouve intended to deploy the dog to bite Ward if he fled or someone else.  For this reason, the district court's grant of summary adjudication must be reversed.

Instead of viewing LeCouve's self-serving declaration with caution, the court embraced it and granted summary judgment to LeCouve based on his articulation of a theory of the case that absolves him of liability notwithstanding the evidence to the contrary.

### G.    Case Law Cited By the Court Does Not Support Granting Summary Judgment

Instead of denying summary judgment based on its finding of a dispute regarding whether LeCouve intentionally deployed the dog, the court reviewed case law from other circuits and identified four cases that "provide some help in answering this question."  (ER 12:10 – 11).   These cases are *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2005), *Neal v. Melton*, 453 Fed. Appx. 572, 574 (6th Cir. 2011), *Melgar v. Greene*, 593 F.3d 348 (4th Cir. 2010), and *Dennen v. City of Duluth*, 2002 U.S. Dist. LEXIS 7887 (D. Minn. May 1, 2002), with the court's decision based almost exclusively on an analogy to *Dennen v. City of Duluth.*  For the reasons discussed below, neither *Dennen* nor any of the other three cases support the court's granting of summary judgment.

The court cites *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 343 (9th Cir. 1978) for the assertion that without "some other affirmative act by LeCouve" the court must resort to "guesswork" (ER 15:14) but as discussed in more detail below, the question of the cause of the damage to plaintiffs natural-

14

gas-powered irrigation engines and the supporting evidence in that case were entirely different from the issues in this case.

### 1. It Was Undisputed that the Dog in *Dennen v. City of Duluth* Was Used For Protection and There Were No Witnesses Other than the Officer

In this case, LeCouve testified that he brought the dog out of the car with him "in case a car extraction is required or in case the suspect flees" and that the dog's role was to "subdue the suspect" if necessary. (ER 62 ¶7). It has never been suggested by anyone or any document that the dog was at the scene for the purpose of protecting its handler. Yet the court even acknowledges that in *Dennen*, the officer "brought the dog with him for protection and not to track or apprehend plaintiff." (ER 15:1 – 2). This alone makes *Dennen* a completely different case.

In addition, in *Dennen*, the plaintiff claimed no memory of the event and there were no other witnesses. *Dennen v. City of Duluth*, 2002 U.S. Dist. LEXIS 7887 (D. Minn. 2002). The officer's testimony that he did not intentionally deploy the dog was the only evidence presented by either side. By contrast in this case, not only is LeCouve's testimony inconsistent with no documentation of his finger injury and with the testimony of Prokopchuk and Bonney, but there is other evidence from which inferences can be drawn. In *Dennen* the court could not view any evidence in the light most favorable to the plaintiff or draw any inferences in his favor because there was no evidence. That is simply not the case here.

### 2. Neither *Dunigan v. Noble* nor *Neal v. Melton* Involved Evidence of a Dog Intentionally Deployed to Bite Someone

In two of the cases, *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2005) and *Neal v. Melton*, 453 Fed. Appx. 572, 574 (6th Cir. 2011) there is no evidence that a police officer intentionally deployed a dog to bite someone. In *Dunigan v. Noble*, an officer pushed the plaintiff who stumbled into the dog's defensive perimeter and the dog bit her. 390 F.3d 486 (6th Cir. 2005). In *Neal v. Melton*, a police dog that an officer had placed but not secured in a police vehicle following a search of a stopped car, wandered out of the police vehicle and back into the stopped car where it allegedly scratched a child who was restrained in the back seat. 453 Fed. Appx. 572, 574 (6th Cir. 2011).

### 3. *Melgar v. Greene* supports Reversal in Case Because That Case Involved Evidence of a Dog Intentionally Deployed to Bite Someone

In *Melgar v. Greene*, a dog was sent to search for an intoxicated teenager on a cold night and bit the teenager. 593 F.3d 348 (4th Cir. 2010). That case supports reversal in this case because in *Melgar* the officer used a dog who was trained to bite any individual he found and ended up biting someone whom the officer did not want it to bite. In this case, similar to *Melgar* and in contrast from *Dennen* discussed above, the officer testified that that the dog's role was to "subdue the suspect" if necessary. (ER 62 ¶7).

16

### 4.    The Analogy to *Neely v. St. Paul* is a Poor Fit

The plaintiff in *Neely v. St. Paul Fire & Marine Ins. Co.* was the owner and operator of three natural-gas-powered engines used for irrigation purposes which became inoperable due to damage caused by contaminated lubricating oil purchased exclusively from appellee Standard Oil.  584 F.2d 341, 343 (9th Cir. 1978).  At the time, Neely was covered for damage to the engines caused by vandalism under a policy issue by appellee St. Paul Fire and Marine Insurance Company (St. Paul).  *Id.*  Neely sued both parties under the theory that either the contaminant was in the oil at the time of purchase in which case Standard Oil would be liable or the contaminant was placed in the oil by a vandal, in which case St. Paul would be liable under the terms of the policy.  *Id.*  Although appellants conceded that the engines were damaged by a contaminant in the lubricating oil and neither Neely or his employees had been negligent, the court granted summary judgment to defendants because Neely did not present any evidence on which a fact finder could rationally choose between his two theories.  *Id.* at 344 – 45.

The court's analogy to *Neely* is a poor fit because in this case, Gangstee has only presented one theory of the case – that LeCouve intentionally deployed the dog – and has presented evidence upon which a jury could make a rational decision.

17

## VIII.  CONCLUSION

The district court erred by granting summary judgment after acknowledging that the parties disputed whether or not LeCouve intentionally deployed the dog and without drawing all inferences and viewing all evidence in favor of the non-moving party.  Accordingly the district court's order granting summary judgment to defendants on plaintiff's first four causes of action should be reversed.


Dated:  July 5, 2012                                    s/Stewart Katz
                                                         Stewart Katz
                                                         Attorney for Appellant

## STATEMENT OF RELATED CASES

Counsel for Plaintiff and Appellant Deanna Gangstee does not know of any related Ninth Circuit cases.